**ESTATE OF OFISA MALAE, by SALOTA OFISA MALAE,**
**Plaintiff**

**v.**

**MAMOE and KOLETA SEGA, Defendants**

High Court of American Samoa
Land and Titles Division

LT No. 40-93

September 14, 1994

Before KRUSE, Chief Justice, AFUOLA, Associate Judge, and
ATIULAGI, Associate Judge.

Counsel:    For Plaintiff, Afoa L. Lutu
            For Defendants, Togiola T.A. Tulafono

Opinion and Order:

Plaintiff estate seeks the eviction of defendants Mamoe and Koleta Sega
from a certain portion of land "Autai" located in Sogi, village of Leone,
Western District. The undisputed facts are that the late Ofisa Malae,
hereafter "Malae," delivered to the defendants on July 6, 1982, a deed of
conveyance to .44 acres of Autai, being its southwestern portion.
Subsequently, the defendants sought and obtained from Malae permission
to use an additional contiguous portion of Autai comprising a triangular
shaped area resulting from the simple extension of one of the boundary
points a further 70 feet. This arrangement, which the parties have
referred to as a "lease," and for which the defendants paid Malae $100 a
month, was subsequently terminated by Malae on June 12, 1989, after he
had his lawyer send the defendants a letter demand to vacate his land. The
defendants duly complied with the attorney's demand letter and in yielding
up the premises they removed a structure which they had built on the

leased land. Sometime thereafter, Malae, then 84 years of age, moved to the mainland to seek medical treatment. He passed away off-island in Tacoma, Washington, on April 30, 1990.

In 1993, Malae's son Salota petitioned for and was granted letters of administration to his father's estate. Salota, who had been off-island for a period of two years, then discovered that the defendants had built six structures on what he believed was his father's land. As administrator, he filed for eviction on behalf of his father's estate.

The defendants, however, claim that they and Malae had previously entered into a contract for the sale of a further portion of Autai. They in turn filed a counter-claim seeking specific performance from the estate. To this end, Mamoe testified that he had built the structures complained of because Malae had in 1988 previously agreed to sell to him the additional area of Autai on which he had built, and that he had on three different occasions given Malae cash installments totalling $5,500, which includes a payment of $1,500 he made to Malae on November 29, 1989 before the latter went off-island. He further testified that the agreed purchase price was $10,000, and that the extent of land involved in the agreement comprised that resulting area from extending the boundary-line 70 feet in his favor. As evidence of their agreement for sale and purchase, Mamoe produced a photocopy of a receipt which he testified was prepared by him, but signed and acknowledged by Malae on November 29, 1989, the date of his last installment. According to Mamoe, after the execution of the receipt, he and Malae drove to CBT Ho-Ching's Store to make a photocopy of the receipt which he kept, while Malae took the original; hence, he was only able to produce a photocopy in these proceedings.

The administrator Salota testified that he was very much involved with his aging father's affairs and that he was not aware of any contract of sale between his father and Mamoe. Furthermore, he testified that his father had left American Samoa in the month of June, 1989 and was thus already off-island when the tendered receipt was purportedly signed by his father.

The issue here is simply whether there was in fact an agreement for the sale of land between Malae and the defendants, and if so, whether the agreement as a contract for the sale of land is enforceable under the Statute of Frauds, A.S.C.A. §37.0211. For reasons given, we find the defendants' evidence to be not believable and accordingly answer the first question in the negative.

First, the photocopy receipt tendered by defendants is not genuine and

quite clearly appears to be the product of forgery. We had before us for comparison purposes five different photocopy specimens of Malae's signature, the authenticity of which was not disputed. These specimens are to be found on the 1982 deed, on counsel's letter demand to defendants to vacate, which Malae had also signed, and also on the back of three of defendants' cancelled checks made to Malae which the latter had endorsed for negotiation. Although each of these specimen signatures appear to have been made by the same person, each signature varies to a degree which shows quite clearly that each was a separate act undertaken at a different time. On the other hand, it is equally clear that the signature attributed to Malae on the photocopy receipt is in actuality a photo-reproduction of Malae's signature contained on the 1982 deed. The two writings are without a doubt identical. Second, we accept the testimony of Salota that his father had long departed the territory several months prior to the date on the photocopy receipt, namely, November 29, 1989. Malae was not around when the receipt was produced. Additionally, Mamoe did not impress as someone who was testifying about events that occurred, rather he came across as someone who was telling a story. Indeed, his version has not been consistent throughout these proceedings. While his earlier answer filed avers to a <u>fully</u> performed agreement, his subsequent testimony and written evidence alluded to a <u>partially</u> performed contract. This inconsistency was also evident in the manner in which his testimony vacillated between direct examination and cross examination--to the point of being equivocal on the very question of whether or not an agreement was concluded. At the same time, he was also noticeably vague and hesitant on such crucial events as when partial payments were supposed to have been made, exhibiting problems with coherence while attempting to reconcile his dates--the asserted agreement would have come into being within the same time frame that he was being evicted by Malae for not paying the stipulated rent to a lease of the very land which he is claiming to be buying.

On the foregoing, we conclude that defendants are trespassing on the plaintiff estate's land and, therefore, the petition to evict will be granted. Additionally, defendants are not "good faith" improvers entitling them to equitable relief, against unjust enrichment, in the way of compensation for improvements upon eviction. Accordingly, defendants will also be required to remove their structures within sixty (60) days of entry of judgment hereof or otherwise forfeit the same to the plaintiff estate. Judgment will enter accordingly.

It is so ordered.